Given under my hand and seal of said Court, at office, at Houston, Texas this _1_ day of _May_ 195_3_.

W. D. MILLER, Clerk
County Court, Harris County, Texas.
By _Stella M. Cool_ Deputy.

**BALLARD v. BALLARD.**

No. 6690.

Court of Civil Appeals of Texas.
Texarkana.

May 7, 1953.

Rehearing Denied May 28, 1953.

Moore & Moore and M. D. Emerson, Paris, for appellant.

O. B. Fisher, Paris, Saulsbury, Skelton, Everton, Bowmer & Courtney, Temple, for appellee.

WILLIAMS, Justice.

In response to special issue No. 1, the jury found that the acts and conduct of appellee, Nina Mae Ballard, the defendant and cross-plaintiff below, toward appellant, Rupert L. Ballard, plaintiff and cross-defendant below, "constituted such excesses, cruel treatment or outrages of such a nature as to render their further living together as husband and wife insupportable." In response to special issue No. 2, the jury found that he was likewise guilty of such acts and conduct toward his wife as to render their further living together insupportable. The judgment awarded her the divorce, and grounded on other jury findings, allowed her $1,000 attorney's fees, and adjudicated property rights with the appointment of a receiver to carry out the terms of the decree.

Under appellant's first four points, concisely stated, he attacks the refusal of the trial court to grant his motion, timely filed, to declare a mistrial because of the conflict in the jury's findings to special issues Nos. 1 and 2; that the finding in response to issue No. 2 was against the great preponderance and overwhelming weight of the evidence; that she was not entitled to a divorce as a matter of law; and that under the evidence he was entitled to the divorce. There is no recital in appellee's motion for judgment or in the judgment which specifically disposes of the jury's affirmative finding to special issue No. 1. Appellee in her brief in reply to the claim of the conflict in the jury's findings seeks to sustain the divorce award under the doctrine of comparative rectitude. We will assume that this was the theory under which she was awarded the divorce.

In Beck v. Beck, 63 Tex. 34, cited by appellee, it is stated, "If the recrimina-

tion on the part of the injured spouse is insignificant compared with the great provocation on the part of the other, the divorce may be granted." See also Marr v. Marr, Tex.Civ.App., 191 S.W.2d 512. Appellee cites the familiar rule in testing the sufficiency of the evidence to support a jury's finding or that of the court, which as summarized in 17 Tex.Jur. pp. 910, 911, reads: "If, discarding all adverse evidence, and giving credit to all evidence that is favorable to the successful party and indulging every legitimate conclusion that is favorable to him (her), a jury might have found in his (her) favor, then it is to be concluded that there is evidence to support the verdict." Above rule is likewise applicable to a test of the sufficiency of the evidence to support the jury's findings to special issue No. 1. The award of the divorce to appellee on her alleged ground of cruel treatment or an award of a divorce to either does not find support in the evidence under the doctrine of comparative rectitude.

This couple had lived together for almost twenty-five years at the time the suit was filed. They together had reared seven boys and one girl, now with homes of their own. She is now in her fifties and he in his sixties. In the early years of their married life they may have had some trivial quarrels and differences not unusual in the adjustment period of such early years of marriage. This was at least twenty years prior to suit. Between January, 1926, time of their marriage, and October, 1950, when this suit was filed, Mrs. Ballard had on four or five occasions secretly left their home for a stay at the homes of friends or relatives. Each time in response to her requests, he had willingly and happily travelled and brought her back home. It appears that shortly prior to the date he filed suit, he had discovered that she was secretly packing up her clothes preparatory to leaving him. He then aided her in further packing and hauled her personal effects to the express office. The record is absent any current incident or reason for this secret preparation to leave their home. He filed the suit for divorce within a few days with the explanation, "Well, I never

did mention a divorce to her no time she ever went away and so I thought maybe that would wake her up and I held up the suit until she got on the stand here in that alimony hearing and after that, I tried to get it to go to trial because I seen it wasn't worth trying to go any further"; "I loved her but she killed that love when she got on that stand last June."

The record reflects that Mrs. Ballard was intensely interested in her church and wanted him to attend the mid-week and all Sunday services. He yielded to her wishes to join her church and later sold a large farm that he owned prior to their marriage and bought a smaller farm to be closer to her church and the schools.

 She testified that "No, I didn't nag at him, I just tried to get him to read and study the Bible with me and I tried to help him that way." He attended church services but not to the extent desired by her. It appears that she became vexed with her husband because he dozed off at night when she proceeded to interpret the Scriptures for him, or when he refused to attend all the church services. Whether he was tired from his labors in his farm operations or lukewarm to her intense religious interest in the church or to her interpretations of the Scriptures for him would not constitute such excesses, cruel treatment or outrages of such a nature as to warrant a divorce in her behalf. The record reflects no other differences worthy of mentioning during their last ten years of marriage. In her own words, "I never knew of his drinking"; "I never had any evidence that he was ever an unfaithful husband"; and "I always considered him honest"; "he kept his word so far as I know"; and "I always considered he paid his debts."

When they married in 1926, he had four sons by his deceased wife and she three sons by her deceased husband, all of whom except his eldest son who soon married were in their early teens or less in age. Two children, a son and daughter, were born to this union. This couple reared all these children and each is now married and have homes of their own. Both plaintiff and defendant are to be commended for their impartial efforts and contributions in rearing, schooling, and providing for the three sets of children through the years. Their efforts have been unselfish. They have both lived exemplary lives.

"The evidence must be 'full and satisfactory' not only to the mind of the trial court but to the appellate court as well." 15 T.J., pp. 549, 555; Art. 4632, Vernon's Ann.Civ.St. "As to the sufficiency of the evidence in suits for divorce, it has been generally said that the state and society have an interest in the marriage contract * * * and for that reason the courts will scrutinize the evidence upon which a decree is based, and apply a different rule than that obtaining in other civil cases." 15 T.J. p. 547. In the twilight of life, a divorce should not be their reward. The evidence simply does not support a divorce for either grounded on their respective allegations of cruel treatment as to render their further living together as insupportable.

The judgment is in all respects reversed and the cause remanded.